# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

MARVIN BENSON,

        Petitioner,   :   Case No. 2:24-cv-03771

  - vs -                     District Judge Michael H. Watson
                                   Magistrate Judge Michael R. Merz

SHELBY SMITH, WARDEN,
 Belmont Correctional Institution,

                                  :

        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus action under 28 U.S.C. § 2254 was brought *pro se* by Petitioner Marvin Benson to obtain relief from his conviction for murder in the Common Pleas Court of Guernsey County, Ohio, in that court's Case No. 18CR098 (Petition, ECF No. 1).  The undersigned immediately ordered the Warden to file the State Court Record, but also ordered Petitioner to file an amended petition "which gives the Court more detail on his claims and pleads what provision of the United States Constitution is involved." (Order, ECF No. 2, PageID 24-25).

On August 28, 2024, Petitioner filed an Amended Petition seven pages in length but with 504 pages of attached exhibits (ECF No. 5).  Mindful of the Court's duty to "liberally construe" *pro se* pleadings, the undersigned offered his construction of the claims made in the Amended Petition and invited Petitioner to correct any misunderstandings (ECF No. 6).  The claims as the Magistrate Judge understood them were:

1

> **Claim 1.** Ineffective assistance of trial counsel for failure to litigate a motion to suppress Benson's statements to the police (PageID 39-411).
>
> **Claim 2.** Denial of defendant's right to be present at critical stages of the proceedings, his right to self-representation, and his right to an unbiased jury (PageID 42-44).
>
> **Claim 3.** Prosecutorial misconduct by suppressing evidence favorable to the defense (PageID 45-47).
>
> **Claim 4.** Denial of Petitioner's rights to confront his accusers and for compulsory process (PageID 48-50).
>
> **Claim 5.** Petitioner was illegally arrested and coerced to make incriminating statements (PageID 51-53).
>
> **Claim 6.** Cumulative Error (PageID 54-55).
>
> **Claim 7.** Unspecified prosecutorial misconduct (PageID 56).
>
> **Claim 8.** Insufficient evidence (PageID 56).
>
> **Claim 9.** Delay in indicting a co-defendant for a year (PageID 56).
>
> **Claim 10**. Void judgment (PageID 56).

(Magistrate Judge's Interpretation of Amended Petition, ECF No. 6, PageID 545-46).  The Magistrate Judge further ordered:  "Not later than September 15, 2024, Petitioner shall advise the Court if any of the above readings of his claims is somehow a misconstruction."  *Id.* As to the exhibits attached to the Amended Petition, the Magistrate Judge noted that this Court is limited to considering the record before the state court by *Cullen v. Pinholster,* 563 U.S. 170 (2011).  Note however that Petitioner has attempted to bring these same documents into the record by incorporating the Amended Petition into his reply.

Benson responded to the Court's construction by accepting it as to Claims 1 and 2, and adding a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), to Claim 3 (Petitioner's Response, ECF No. 8).  Benson makes no statement as to Claim 4.  On Claim 5 he refers the Court to his

sentencing appeal reported at 2020 Ohio App. LEXIS 1196 (Ohio App. 5th Dist. Mar. 23, 2020). He makes no statement as to Claim 6 and as to Claims 7-10 he states "Petitioner will address these claims and point out to expand later once a copy of State records are served to him as stated by the Court." (ECF No. 8, PageID 554).

The Magistrate Judge then ordered the Respondent to answer (ECF No. 9). The Warden did so, filing as well the required State Court Record on November 15, 2024 (ECF Nos. 14 & 15). On the same day, the Magistrate Judge notified Benson his reply would be due December 9, 2024 (ECF No. 16), allowing him the same three weeks that is allowed to all habeas petitioners.

On December 5, 2024, Benson objected to the State Court Record as filed, asserting it was incomplete and omitted many relevant records. He also stated he would not be able to file a reply until the omitted records had been submitted. (ECF No. 17).

Benson's first objection was that his copy of the State Court Record had been inappropriately redacted in that members of the public could see the same documents in unredacted form, but he could not because inmates are barred from using the Ohio Public Records Act to obtain documents. *Id.* at PageID 2991. Upon examination of the State Court Record, the Magistrate Judge finds that the copy filed with the Court has many proper names redacted (See, e.g., Indictment, State Court Record, ECF No. 14, Ex. 1). Respondent's counsel has certified that a copy of the same document filed with the Court has been served on Petitioner (ECF No. 15, PageID 2989) and the Court has no reason to doubt the veracity of the Certificate. Petitioner has no higher right than the Court to see unredacted documents nor has he offered any argument why those documents should be unredacted as they are available to the public through the Court's electronic case filing system (CM/ECF). In other words, Benson may if he wishes make an argument why those documents should be unredacted, but he has not done so. With respect to

3

redaction, he has the same documents the Court has.

**The Record the Court May Consider Versus the Record Petitioner Wants the Court to Consider**

With his second objection, Benson introduces what has become the major theme of his filings since December 2024, to wit, that Tierra Mounts, now known as Tierra Rockaway, is a co-perpetrator in the death of her son and Benson's victim, Wyatt Mounts, and should have been charged and tried with him, as a co-defendant, rather than indicted and tried separately a year after he was convicted. Based on that claim, he asserts records from Ms. Rockaway's cases, Guernsey County Common Pleas Court Case Nos. 19 CR 280 and 21 CR 25 and a wrongful death case in the same court, 21-PI-197, are relevant and should be added to the record in this case (ECF No. 17, PageID 2992).

Benson's third objection is that there are relevant events that happened in his case which are not reflected in the State Court Record. For example

> Petitioner's conviction is solely based on an alleged confession. The coerced statement's [sic] was interpreted as a confession. Petitioner notes the transcripts of the interviews between Detective Clark and Petitioner on April 16, 2018 as its only evidence. Yet, these transcripts have not been submitted to Petitioner. Clearly, the transcripts are relevant to the claims raised, as it being, the only evidence against the Petitioner. This also includes the contradicting missing records regarding Tiera Rockaway aka Mounts interviews with Detective Clark. All of which stems from fruits of an illegal arrest.

(ECF No. 17, PageID 2993). As the Magistrate Judge sought to explain to Petitioner in ruling on these objections, the state court record on which this case must be decided is the record before the Fifth District Court of Appeals. That record almost certainly does not include, for example, any transcript of the interview between Benson and Detective Clark because any such transcript would

4

have, if offered, been excluded as hearsay at trial. What the Court of Appeals would have seen is a transcript of Clark's testimony at trial and that transcript has been provided to this Court and to Benson. Also part of the record before the Court of Appeals and before this Court is the transcript of a hearing on Benson's motion to suppress statements he made at the time of his arrest (ECF No. 14-3).

On December 6, 2024, the Magistrate Judge overruled Benson's objections to the asserted incompleteness of the State Court Record and confirmed that Benson's reply was still due on December 9, 2024 (ECF No. 18). Since then Benson has filed a flurry of documents attempting to compel the Court to accept his theory of what is relevant and add to the record all of the documents supportive of that theory (ECF Nos. 19, 20, 21, 24, and 29). Finally on January 14, 2025, he filed what he labeled "Petitioner's Mentally Forced Coerced Reply for the Proceedings" (hereinafter the "Reply," ECF No. 28).

The Rules Governing § 2254 Proceedings create a structure for habeas corpus cases. When a petitioner files his or her case, the Court gives it a preliminary review. Unless that review shows the petition is meritless on its face, the Court orders the State to answer, as the Court did here immediately after the original Petition was filed. The Rules then require the Court to set a reply date so that a petitioner can respond to the State's arguments. If a petitioner needs more time to reply than the Court has initially given, petitioner can request additional time; these requests are routinely granted.

However the Rules do not provide for an indefinite expansion of time until a petitioner gets all the documents he claims are relevant. As the Court has repeatedly told Petitioner, the records the Court may consider are severely limited by Supreme Court precedent, particularly *Cullen v. Pinholster,* 563 U.S. 170 (2011). The Court cannot ignore Supreme Court precedent, however

5

much some litigants may feel "mentally forced" or "coerced" by it.  That said, this Report will analyze the record now before the Court in recommending a disposition.

**Litigation History**

On May 25, 2018, the Guernsey County Grand Jury handed down an indictment charging Benson with two counts of murder in violation of Ohio Revised Code § 2903.02; two counts of involuntary manslaughter in violation of Ohio Revised Code § 2903.04(A); one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1); and one count of endangering children, in violation of Ohio Revised Code § 2919.22(B)(1)(Indictment, State Court Record, ECF No. 14, Ex. 1).  The case was tried to a jury which found Benson guilty on all counts. *Id.* Ex. 52.  He was then sentenced to a term of imprisonment of fifteen years to life. *Id.* Ex. 55.

Benson was represented by retained counsel at trial.  Through different retained counsel he appealed to the Ohio Court of Appeals for the Fifth District which affirmed the conviction.  *State v. Benson*, 2020-Ohio-1258 (5th Dist. Mar. 23, 2020).  Benson filed a combined notice of appeal to the Ohio Supreme Court from this decision and the Fifth District's later decision to deny reconsideration, but the Supreme Court declined to exercise jurisdiction (Entry, State Court Record, ECF No. 14, Ex. 67).

Benson filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 which the trial court denied on *res judicata* grounds. *Id.* at Ex. 100.  Benson appealed and the appeal remained pending as of the date the Return of Writ was filed (November 15, 2024).

**Analysis**

6

In the Return of Writ, Respondent asserts that all of Benson's Grounds for Relief except the First are procedurally defaulted or non-cognizable (Return, ECF No. 15). Benson's Reply does not respond to any of the Warden's defenses. Instead he accuses the undersigned of coercion in forcing him to file. A habeas petitioner is free to waive his right to file a reply. What he is not free to do is extend the time for replying by refusing to do so until the Court accepts his view of what should be in the record.

As the Magistrate Judge understands Ground One, it is that Benson received ineffective assistance of trial counsel when his trial attorney did not include in his motion to suppress a claim that his arrest was unlawful and therefore his admissions should have been excluded under the Fifth Amendment as the product of an unlawful arrest. Benson raised this claim in his counseled direct appeal and the Fifth District decided it as follows:

> {¶36} In his second assignment of error, Appellant argues counsel was ineffective for failing to raise a claim his confession was inadmissible despite the giving of *Miranda* warnings because he was unlawfully detained.
>
> {¶37} A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*
>
> {¶38} A person arrested without probable cause cannot have incriminating statements, obtained after the arrest, used against him at trial. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The magic words "you are under arrest" are not necessary to constitute an arrest. Any police confinement beyond

the parameters in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is the key to what constitutes an arrest. If one is deprived of his movement by the state, he is in custody and considered under arrest, if he could not have attempted to leave. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Brown, supra.*

{¶39} If an illegal arrest is made by the police, the subsequent issuance of *Miranda* warnings to the accused will not cure the original unlawful act. *Miranda* concerns the Fifth and Sixth Amendment guarantees. The Fourth Amendment concerns illegal arrests, and the fruits therefrom. The exclusionary rule is a distinct safeguard from *Miranda's* protection. *Brown, supra*. If any statements are "seized" during illegal custody, they are inadmissible. *Dunaway v. New York, supra*.

{¶40} Appellant argues the facts in the instant case are indistinguishable from *Dunaway, supra*. However, Dunaway was involuntarily taken to the police station for questioning. In the instant case, the record reflects Appellant voluntarily went to the station to talk to police.

{¶41} Counsel moved to suppress Appellant's statement on other grounds. At the suppression hearing, Ptl. Eubanks testified Appellant was asked, not told, to come to the station to talk with police. He testified he "possibly" may have been detained if he refused, but he was unsure. Supp. Tr. 30. Det. Clark testified at the suppression hearing he Mirandized Appellant before interviewing him, but he was not in custody. Supp. Tr. 43. The detective wanted to hear what Appellant had to say because there were only two people at the scene when the body was discovered, but did not inform Appellant he was under arrest. *Id.*

{¶42} At trial, Det. Clark testified Appellant was asked to come to the station, and came voluntarily. When asked what would have happened if Appellant had tried to leave the room, Det. Clark said he would have asked Appellant to sit down. Det. Clark responded if Appellant would not sit down when asked, he "probably would have been detained." Tr. 369-70. However, the officer's subjective intent to arrest is not controlling. *State v. Edwards*, 10th Dist. Franklin No. 15AP-879, 2016-Ohio-4771, 68 N.E.3d 228, ¶19. Further, the officer's statement as to what he would "probably" have done had Appellant tried to leave is not a certainty as to his intention to detain Appellant.

8

{¶43} Appellant argues he was placed in custody immediately upon his arrival at the police station, as he was placed in a locked interview room, and an officer took away his cell phone and wallet. However, Det. Clark testified at the suppression hearing Appellant could have left the station, but wouldn't have his wallet and phone unless he asked for them. Supp. Tr. 55. At trial, Det. Clark testified for security reasons, to prevent civilians being interviewed from wandering freely throughout the station where evidence and confidential information is accessible, suspects are placed in a locked interview room. Security measures in place to restrict Appellant's freedom of movement inside the police station are not controlling on whether Appellant was free to leave the station if he asked to leave, after voluntarily accompanying the officer to the station. The testimony at the suppression hearing indicates Appellant was free to leave the station, he simply would have had to ask for his cell phone and wallet to be returned.

{¶44} During the first interview with Appellant, Det. Clark noticed Appellant's story kept changing. Eventually, Appellant admitted to police he physically kicked W.M. out the door of the residence, at which time W.M. hit his head on the concrete. The officer had noted a gash on W.M.'s head, and we find at this point in the questioning, the officer had probable cause to further detain Appellant.

{¶45} The record reflects Appellant voluntarily went to the station for questioning, and during the first interview Appellant made incriminating statements giving police probable cause to detain him further. We find Appellant has not demonstrated had counsel moved to suppress his statements on the basis they were the product of an illegal detention, the motion would have been granted, and therefore has not demonstrated a reasonable probability of a change in the outcome had counsel made the motion.

{¶46} The second assignment of error is overruled.

*State v. Benson, supra.*

A state court's findings of fact are binding on this Court in habeas corpus unless the petitioner shows the findings resulted in a denial of the claim that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d)(2). "[R]egardless of whether [a federal court] would reach a different conclusion were [it] reviewing the case *de novo*, the findings of the state court must be upheld unless there is

9

clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001). Although Benson continues to insist his admissions to Detective Clark were the fruit of an illegal arrest, he points to no evidence in the existing State Court Record to contradict the finding of the Fifth District that he was not under arrest when he made the relevant admissions. His allegations of illegal arrest are purely conclusory: they do not point to testimony of historical facts in the State Court Record which would undermine the Fifth District's conclusion.

Because this is the only one of his current Grounds for Relief that he raised on direct appeal, Respondent asserts the remaining claims are barred by his procedural default in not raising them.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that

>there was "cause" for him to not follow the procedural rule and that
>he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant rule: issues that could have been raised on direct appeal and were not are *res judicata* and not subject to review in subsequent proceedings. *State v. Davis*, 119 Ohio St.3d 422, ¶ 6 (2008), citing *State v. Hutton,* 100 Ohio St.3d 176, 2003-Ohio-5607, 797 N.E.2d 948, ¶ 37; *State v. D'Ambrosio* (1995), 73 Ohio St.3d 141, 143, 652 N.E.2d 710.

Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), has been repeatedly held to be an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). This rule was enforced against Benson when the trial court dismissed his post-conviction petition on that basis.

Although he has never pleaded this claim in either his original or amended petition, Benson repeatedly asserts he was denied due process when the State tried him separately from Tierra Rockaway for the murder of Wyatt Mounts and then indicted and tried Tierra Rockaway for the same crime a year later. Benson has cited no Supreme Court precedent which would make that action unconstitutional and the undersigned is unaware of any. The Court understands that if they had been tried together, Benson would have tried to put the blame on the victim's mother, but he admitted to the police in his very first interview that he had kicked the six-year old boy in a way which could have burst his bowel and caused the peritonitis which killed him. The State's charging of Tierra Rockaway separately violated no constitutional right of Benson's.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Amended Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

February 3, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #