## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MARVIN J. BENSON,**

        **Petitioner,**

      **v.**

**SHELBY SMITH, WARDEN OF
BELMONT CORRECTIONAL
INSTITUTION,**

      **Respondent.**

**Case No. 2:24-cv-3771**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Merz**

### OPINION AND ORDER

In his February 3, 2025, Report and Recommendation (R&R, Doc. 31, #3224), Magistrate Judge Merz recommends that the Court dismiss Petitioner Marvin J. Benson's Amended Petition for Writ of Habeas Corpus (Doc. 5)[1] because (1) the state appellate court did not unreasonably apply *Strickland* to Benson's ineffective assistance of counsel claim nor unreasonably determine the facts related to that claim, and (2) procedural default bars Benson's other claims. Benson objected. (Doc. 36). The Court recommitted the matter to Magistrate Judge Merz, (Doc. 38), who issued a Supplemental R&R (Doc. 39), again recommending dismissal for the same reasons. Benson objected to the Supplemental R&R as well. (Doc. 43). Beyond these objections, Benson has filed a variety of motions primarily seeking to supplement the

---

[1] Magistrate Judge Merz had ordered Benson to file an amended petition to provide more detail about his claims so that he could conduct preliminary review of the petition. (Doc. 2). Benson filed an amended petition, (Doc. 5), but he viewed the amended petition as supplementing the original one, not replacing it. (Doc. 8, #552). Because the Amended Petition incorporates the entirety of the original petition, the Court will still treat the Amended Petition as the operative one.

state court record and, more recently, to dispute Magistrate Judge Merz's jurisdiction. (Docs. 17, 19, 21, 24, 28, 29, 32, 41).

For the reasons explained below, the Court **OVERRULES** Benson's objections (Docs. 36, 43), **ADOPTS** the R&R and Supplemental R&R (Docs. 31, 39), and **DISMISSES** Benson's Amended Petition (Doc. 5) **WITH PREJUDICE**. Because the Court further agrees with the Magistrate Judge that reasonable jurists would not disagree with these conclusions, the Court **DENIES** Benson a certificate of appealability and **CERTIFIES** that any appeal of this Opinion and Order would be objectively frivolous.

## BACKGROUND

### A.    State Court Proceedings

On Monday, April 16, 2018, Benson's girlfriend's six-year-old son, W.M., tragically died. *State v. Benson*, 2020-Ohio-1258, ¶¶ 2–3. When paramedics arrived at the scene around 3 p.m. that day, they concluded that the child had already been dead for over an hour. *Id.* The police officer who had responded to the scene also "noted that the child's body was 'battered and bruised.'" *Id.* ¶¶ 3–4. That led the officer to request a detective. *Id.* ¶ 4. When the detective arrived, he asked Benson and his then-girlfriend, Tiera Rockaway,[2] to go to the station with him. *Id.* ¶¶ 4–5. They did.

---

[2] The state appellate court refers to Benson's then-girlfriend and mother of the child as Tiera Mounts. In the petition, however, Benson refers to her as Tiera Rockaway. It appears that she changed her name since this incident, so the Court will refer to her by her present name, Tiera Rockaway.

2

During Benson's interview, he told two somewhat competing stories. Benson initially informed the detective that W.M. had bruises because he had "episodes" where he would beat himself and that Tiera disciplined him "by busting his ass and… making him do wall squats." *Id.* ¶ 5. According to Benson, Tiera's abuse was not unusual; he reported that he often had to call Tiera's mom to intervene when "Tiera went pretty far." *Id.* ¶ 7. Benson also explained that, the night before, W.M. had been misbehaving, and so they made him do wall squats as punishment. *Id.* ¶ 5. The following morning, W.M. struggled to get out of bed, and Benson saw that the child had vomited multiple times in his room and kept falling down. *Id.* ¶ 6. In response, Benson made him do more wall squats. *Id.* And when the child was slow in getting ready to go to school, Benson admitted to "kicking W.M. out the front door of the house, where W.M. hit his head on the stoop." *Id.* As a result, W.M. stayed home from school, and Benson later gave him cough syrup. *Id.* But when Tiera came home that afternoon, she found W.M. dead in his room. *Id.*

At that point, the detective took a break. *Id.* ¶ 7. When the interview resumed, Benson changed his story in some regards. Now he claimed that, while the child was performing the wall squats the night before, Benson "kicked W.M.'s feet out from under him." *Id.* ¶ 8. Benson then "tossed W.M., and he hit a space heater or radiator." *Id.* When W.M., who recall was six years old, attempted to hit Benson back, "Appellant kicked W.M. in the stomach. W.M. fell over. [Benson] tossed W.M. a second time, and kicked W.M. again while he was laying on the ground." *Id.* Overall, Benson "[a]dmitted several times to kicking W.M. twice on Sunday night and once on

3

Monday morning, and to throwing W.M. across the room twice." *Id.* Tiera apparently added on to this abuse and threw and kicked the child, too. *Id.*

An autopsy later determined that the cause of death was a ruptured bowel and resulting peritonitis. *Id.* ¶ 10. The ruptured bowel was caused by "blunt force trauma to the abdomen by something of substance inflicted hard and fast, such as a punch or a kick." *Id.* Additionally, the autopsy revealed a swollen brain and two times the amount of diphenhydramine, the active drug in over-the-counter cough medicines, that would be proper for an adult (let alone a six-year-old child). *Id.*

A little over a month later, on May 18, 2018, a grand jury in Guernsey County, Ohio, indicted Benson for two counts of felony murder, two counts of involuntary manslaughter, one count of felonious assault, and one count of child endangerment. *Id.* ¶ 11; (Doc. 5, #30). A jury convicted Benson on all counts. *Benson*, 2020-Ohio-1258, ¶ 13. The judge merged the charges and sentenced Benson to fifteen years to life based on the felony murder charge. *Id.*

A year later, a grand jury indicted Tiera Rockaway separately for the child's murder. (Doc. 31, #3223). She eventually pleaded no contest to four counts of child endangerment. (*See* Judgment Entry, *State of Ohio v. Tiera Rockaway*, No. 21-cr-25 (Guernsey Cnty. Common Pl. Mar. 2, 2021)).[3]

Benson appealed his convictions and, as relevant here, argued that "Defendant-Appellant was denied his right to the effective assistance of counsel, as

---

[3] The Court is permitted to "take judicial notice of public records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

guaranteed by the Sixth and Fourteenth Amendment[s] [to] the United States Constitution, due to defense counsel's failure to challenge the admissibility of his custodial statements to the police as being the product of an illegal arrest." *Benson*, 2020-Ohio-1258, ¶ 14 (cleaned up). Specifically, Benson claimed that he did not voluntarily go to the police station, as the trial court had found, but instead was detained without probable cause. *See id.* ¶¶ 43–44. Therefore, he argued, his detention constituted an unlawful arrest. *See id.* ¶ 44. And statements made following an illegal arrest, even if they occur after a *Miranda* warning, are generally inadmissible. *Id.* ¶¶ 38–40. According to Benson, defense counsel's failure to raise this issue fell below the constitutional requirement for effective counsel. *Id.* ¶ 36.

The state appellate court applied the test for ineffective assistance of counsel from *Strickland v. Washington*, 466 U.S. 668 (1984), and found that his trial counsel's performance was not deficient. *Benson*, 2020-Ohio-1258, ¶ 36–46. It agreed with the trial court that Benson voluntarily went to the police station. *Id.* ¶ 40. Then, once he admitted to kicking and throwing W.M., the police had probable cause to arrest him. *Id.* ¶¶ 40–44. Because the police did not unlawfully arrest him, any motion to suppress his statements on that basis likely would have failed, meaning Benson suffered no prejudice based on his counsel's decision not to pursue this ground. *Id.* ¶ 45. Additionally, the court noted that his counsel did move for suppression on other grounds, and the trial court held a full suppression hearing about his statements, further confirming that Benson did not have a viable ineffective assistance of counsel

5

claim. *Id.* ¶ 41. The Ohio appeals court rejected his remaining claims as well, and thus affirmed his conviction. *Id.* ¶ 62.

Petitioner, represented by counsel, then moved the appeals court to reconsider its decision. (State Ct. R., Doc. 14-1, #957). But the court denied that motion. (*Id.* at #976). Benson further appealed to the Ohio Supreme Court, (*id.* at #977), but it declined jurisdiction to hear his appeal, (*id.* at #1000). While awaiting that court's response, though, Benson filed a petition for post-conviction relief in the trial court, seeking to vacate or set aside his conviction, repeating his above claim for ineffective assistance of counsel. (*Id.* at #1001). On the same day, however, his counsel moved to stay the trial court proceedings, (*id.* at #1012), which that court granted, (*id.* at #1015).

With the stay in place, Benson decided to take matters into his own hands. Proceeding pro se, he began his quest for additional records relating to the investigation into him, and also the investigation into Tiera Rockaway, in order to support his post-conviction petition and to defend against a civil wrongful-death claim.[4] (*Id.* at #1016). To that end, he filed, in the now-stayed case, a Motion to Access Public Records. (*Id.*). But the court denied that motion due to the stay. (*Id.* at #1022). Benson appealed that decision, but the state appellate court affirmed the trial court's ruling.[5] (*Id.* at #1043–44). It did so not due to the stay, though, but rather on the

---

[4] To be clear, at the time Benson filed the pro se motion, he was still represented by counsel in the action itself.

[5] It is not entirely clear how Benson was able to take an interlocutory appeal of an order denying a discovery motion, given that Ohio law generally follows the final order doctrine. But the state appeals court did not raise any jurisdictional issues, and it reached the merits of the claim. So this Court declines to ponder the question further.

grounds that Benson had failed to identify the documents he was requesting. (*Id.* at #1043). Then, in January 2023, his counsel for the post-conviction petition withdrew. (*Id.* at #1045–46).

On November 3, 2023, Benson (again proceeding pro se) moved to reactivate his post-conviction petition and lift the stay, (*id.* at #1064), which the state court granted, (*id.* at #1071). Shortly after, he filed an amended petition raising ten claims for relief, (*id.* at #1457–83), but the state court denied it, (*id.* at #1524). Benson appealed that decision. (*Id.* at #1525). That appeal remained pending at the time he filed this habeas action on July 17, 2024. (Doc. 1, #8). But on February 3, 2025, the state appeals court affirmed the trial court's denial of his post-conviction petition. *State v. Benson*, 2025-Ohio-345, (5th Dist. Feb. 3, 2025).

## B.    Habeas Petition

That brings us to Benson's Petition for Writ of Habeas Corpus (Doc. 1) in this Court. As noted, he filed it in July 2024, and it included three grounds for relief: (1) "erroneous evidentiary ruling on alternate perpetrator is not harmless," (2) "Sixth Amendment Claim of ineffective assistance of counsel due to viable ground for suppression of his statement to police," and (3) "Prejudicial remarks by third parties." (*Id.* at #5–8). Magistrate Judge Merz responded to that initial filing by ordering Benson to file an amended petition to provide more detail on his claims, (Doc. 2, #23–25), which Benson did, (Doc. 5).[6] But unlike his original petition, the amended

---

[6] Along with the amended petition, Benson filed an exhibit marked "Claims" (Doc. 5-2), which appears to be a continuation of his petition. The court will consider this exhibit as part of his petition and distinct from the other records attached as exhibits.

petition did not follow the required habeas form, and it also seemed to raise additional grounds for relief.

Because the amended petition greatly expanded Benson's claims, but they still lacked clarity, Magistrate Judge Merz issued what he characterized as an "Interpretation of Amended Petition." (Doc. 6). There, he clarified Benson's ten grounds for relief as:

> **Claim 1.** Ineffective assistance of trial counsel for failure to litigate a motion to suppress Benson's statements to the police.
> **Claim 2.** Denial of defendant's right to be present at critical stages of the proceedings, his right to self-representation, and his right to an unbiased jury.
> **Claim 3.** Prosecutorial misconduct by suppressing evidence favorable to the defense.
> **Claim 4.** Denial of Petitioner's rights to confront his accusers and for compulsory process.
> **Claim 5.** Petitioner was illegally arrested and coerced to make incriminating statements.
> **Claim 6.** Cumulative Error.
> **Claim 7.** Unspecified prosecutorial misconduct.
> **Claim 8.** Insufficient evidence.
> **Claim 9.** Delay in indicting a co-defendant for a year.
> **Claim 10.** Void judgment.

(*Id.* at #545–46 (citing Doc. 5, #39–56)). Recognizing that he may have misconstrued the claims, the Magistrate Judge also gave Benson roughly two weeks to inform the Court if that were the case. (*Id.* at #546). Benson responded to the Magistrate Judge's offer by clarifying the third claim is a *Brady* claim and adding factual allegations to the fifth claim. (Doc. 8, #553–54). Benson did not otherwise object to the summary of his claims.

Along with the amended petition, Benson filed hundreds of pages of records. (*See generally* Docs. 5-1–18). So Magistrate Judge Merz also made it clear that, absent

a claim of actual innocence (which Benson has not advanced), a federal court reviewing a state court conviction, "is limited to consideration of the record that was before the state courts." (Doc. 6 #547 (citing *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011))). He further explained this meant that the Court could not consider the attachments unless they were properly part of the state court record. (*Id.*).

On November 15, 2024, Respondent filed the State Court Record (Doc. 14), and its Return of Writ (Doc. 15). Benson objected to the State Court Record as incomplete, which he claimed made him "unable to [r]eply." (Doc. 17, #2991). Magistrate Judge Merz responded, once again noting that Benson's filing (this time his objections) lacked clarity. (Doc. 18, #3006–07). On the question of the appropriate record, though, he overruled Benson's objections. (*Id.* at #3008). He explained that the record was limited to the state court record (and not all the fruits of discovery), which Benson had already received. (*Id.* at #3007–08).

Benson then filed several motions continuing to pursue additional records and discovery. (Docs. 19, 21). He was particularly interested in materials relating to the investigation into Tiera Rockaway because he believes she should have been considered a co-defendant. (Docs. 19, 21). Along with these motions, he submitted voluminous filings for the Court to review. (Doc. 22, #3035–36 (describing receiving box of filings)). The Magistrate Judge rejected each of these requests. (Docs. 22, 23). And he ordered Benson to either file a reply or show good cause why the Court should not decide the case without a reply. (Doc. 23, #3046).

9

But rather than file either of those, Benson filed a Motion to Correct the Record (Doc. 24), repeating his arguments about the State withholding evidence about Tiera Rockaway, and the back-and-forth about her being a co-defendant and how she should have been tried alongside him. Magistrate Judge Merz denied this Motion without prejudice so that Benson could include those arguments in a proper reply. (1/14/25 Not. Order).

That still didn't do the trick. Instead of filing a reply, Benson filed a Motion to Appoint Counsel (Doc. 26), which Magistrate Judge Merz denied. (Doc. 27). But five days later, Benson filed what he labeled a "Mentally Forced Coerced Reply for the Proceedings" (Doc. 28). There, Benson accused Magistrate Judge Merz of "acting as an organ of the State on behalf of the Respondent." (*Id.* at #3200). Then, he repeats that he cannot fully reply because he lacks certain records and portions of them are blacked out. (*Id.* at #3200–01). As he sums it up, he was "mentally forced and coerced into filing this Reply as the proceedings are completely incomplete in this matter." (*Id.* at #3201). The following day, Benson submitted a Motion for Leave to Conduct Discovery, reiterating the same arguments about having a co-defendant (even though she was charged and tried a year later), lacking records related to the investigation into Tiera, and requesting counsel. (Doc. 29). But Magistrate Judge Merz struck that motion because Benson did not sign it. (1/29/25 Not. Order).

On February 3, 2025, Magistrate Judge Merz issued the first Report and Recommendation (Doc. 31), recommending the Court dismiss the petition. The R&R first clarifies that the only evidentiary record this Court can consider on habeas

10

review is the state court record that was before the Ohio Fifth District Court of Appeals. (*Id*. at #3216–17 (citing *Cullen*, 563 U.S. at 181–82). So, in Magistrate Judge Merz's view, Benson's attempts to supplement the record fail. (*Id*.).

Turning to the actual grounds for relief, the R&R began with Benson's first claim—ineffective assistance of counsel. (*Id*. at #3219–22). The R&R concludes that Benson's claim fails because Benson has not presented clear and convincing evidence that the state court's findings of fact on this issue are unreasonable. (*Id*.).

As for the other grounds for relief, Magistrate Judge Merz concluded that Benson did not raise them on direct appeal, so they are procedurally defaulted. (*Id*. at #3222–23). Furthermore, even though Benson never expressly raises it as a ground for relief, Magistrate Judge Merz addressed Benson's repeated contention that the state violated his due process rights by charging Tiera Rockaway a year later for the same crime. (*See id*. at #3223). According to Benson, the two should have been tried together. (*Id*.). But the Magistrate Judge found that the state did not violate any constitutional right to co-indictment. (*Id*.). Based on these findings, Magistrate Judge Merz recommended dismissing Benson's petition with prejudice. (*Id*. at #3224). And he informed Benson that that he had fourteen days to submit objections. (*Id*.).

Benson first responded by refiling his Motion to Compel Discovery (Doc. 32), which the Magistrate Judge denied the same day, (2/10/25 Not. Order). Then Benson filed a Motion to Retrieve the Attached Exhibit (Doc. 34) (his copy of the State Court Record) from his previous Motion to Compel, which Magistrate Judge Merz granted, (2/21/25 Not. Order).

After that, Benson objected. While the Clerk did not docket the objections until March 3, it appears that Benson signed them on February 12, (Doc. 36, #3250), so the Court accepts the objections as timely. There, Benson objects to the "entirety" of the R&R as a "meaningless ritual." (*Id.* at #3233). First, he argues that there was evidence he was unlawfully arrested at the scene, contesting the state court's findings of fact, particularly by relying on the transcript of the detective's trial testimony. (*Id.* at #3233–43). Next, Benson repeats his previous claims that Magistrate Judge Merz is "actually acting as an agent on behalf of the State of Ohio and not being a neutral party." (*Id.* at #3244). And then he reiterates his arguments that the government unconstitutionally withheld the records from its investigation into Tiera Rockaway, and this caused an "extreme miscarriage of justice." (*Id.* at #3247–48). He did not otherwise address the procedural default problem.

At that point, the case was reassigned from another judge on this Court to the undersigned. (Doc. 37). This Court then recommitted the matter to the Magistrate Judge for further consideration in light of Benson's objections. (Doc. 38). That resulted in a Supplemental R&R (Doc. 39), again recommending dismissal of Benson's petition with prejudice. The Supplemental R&R repeated that the Court cannot consider new evidence beyond the state court record. (*Id.* at #3257 (citing *Upshaw v. Stephenson*, 97 F.4th 365, 372 (6th Cir. 2024))). As for the first ground asserting ineffective assistance of counsel, Magistrate Judge Merz reiterated that there is no evidence that the state appellate court unreasonably determined the facts or unreasonably applied *Strickland* in rejecting Benson's appeal. (*Id.* at #3257–59). For

12

the other grounds, Benson did not argue they were not procedurally defaulted and thus not barred by res judicata, but instead "attempt[ed] to litigate again his claim that it was a denial of due process." (*Id.* at #3260). On that point, the Magistrate Judge repeated that charging and trying Tiera separately did not violate due process because "there is no constitutional right to co-indictment." (*Id.*). Therefore, Magistrate Judge Merz again recommended dismissal with prejudice. (*Id.*).

Benson objected in a sense to that Supplemental R&R by filing a "Notice" that he "has never conceded to have a Magistrate Judge be part of this case" and that he "does not consent to the jurisdiction of a Magistrate Judge." (Doc. 41, #3266). But Magistrate Judge Merz informed Benson that his lack of consent "is immaterial because the case is referred under 28 U.S.C. § 636(b)" and this District's Amended General Order 22-05. (Doc. 42, #3269).

Lastly, Benson filed 61 pages of objections. (Doc. 43). Because Petitioner "has no idea what is even going on in the matter[]" at this point, he chose to "start from scratch." (*Id.* at #3270–71). He claimed to reduce his grounds for relief to only claims two, three, and five, but his statement of facts and discussion of those claims still referenced the conduct underlying the other original grounds for relief. (*Id.* at #3271–313).

With that, the matter is ripe for the Court's review.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review an R&R de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*,

No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that review extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (cleaned up) (quoting Fed. R. Civ. P. 72(b)(3)). A "proper" objection, however, means a specific one. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). If a party makes only a general objection—one which fails to set forth the grounds with any specificity—that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant must identify, with sufficient clarity, each issue in the report and recommendation to which he objects, or else the litigant forfeits the Court's de novo review of the issue. *Miller*, 50 F.3d at 380 (citation omitted) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, the Court also notes that a pro se litigant's pleadings, like Benson's Petition and his objections, are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v.* Rose, 765 F.2d 82, 84–85 (6th Cir. 1985). Even so, pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Johnson v.*

14

*Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citation omitted).

For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

## LAW AND ANALYSIS

The R&R and Supplemental R&R break Benson's claims into two categories, and Benson's Objections track this division. First, the R&Rs analyze on the merits Benson's first claim for relief, in which he alleges ineffective assistance of counsel based on his trial attorney's failure to move to suppress his statements to the police following an unlawful arrest. Benson objected to the R&Rs' analysis of this issue, so the Court will review this claim de novo. As to all remaining claims, though, the R&Rs conclude they were procedurally defaulted. And as to that analysis, Benson offers at most general objections. Because general objections are treated as a failure to object, the Court will only review those portions of the R&R and Supplemental R&R for clear error. Ultimately, though, the Court agrees with the R&Rs as to both categories of claims, and thus dismisses Benson's Amended Petition with prejudice. But, before explaining why, the Court starts by addressing a few preliminary matters.

15

**A.    Magistrate Judge Merz Has Jurisdiction in this Case.**

The Court begins with Benson's objection to the Magistrate Judge's jurisdiction. In response to the Supplemental R&R, Benson filed a notice stating that he "has never conceded to have a Magistrate Judge be part of this case" and that he "does not consent." (Doc. 41, #3266). But as the Magistrate Judge correctly noted, the referral statute, 28 U.S.C. § 636(b), does not require a party's consent so long as the Magistrate Judge issues only a Report and Recommendation as to dispositive motions. (Doc. 42, #3269). Nor is there any question that this Court's Local Rules provide for an automatic referral for such purposes in habeas cases like this one:

> All non-capital cases [] seeking relief under 28 U.S.C. § 2241 or § 2254 shall be assigned to a District Judge resident at the seat of court where the case is filed and randomly assigned to one of the District's full-time Magistrate Judges or to recalled Magistrate Judge Michael R. Merz. Each such case is hereby referred to the assigned Magistrate Judge for all purposes including deciding any matters classified by law as non-dispositive and filing a report and recommendation on all matters classified by law as dispositive.

Amended General Order 22-05(1). Consistent with this Order, the Court assigned the matter to Magistrate Judge Merz, who then exercised his statutory authority under 28 U.S.C. § 636(b) to decide Benson's various discovery motions, (*see e.g.*, Docs. 29, 32 (motions); Doc. 33 (ruling)), and to issue R&Rs regarding the merits of Benson's petition, (Docs. 31, 39). So Benson's jurisdictional objection falls flat.

**B.    The Court Can Only Consider the State Court Record.**

Another preliminary question is what records the Court can consider in reviewing a federal habeas corpus petition under § 2254. Starting as early as Benson's Amended Petition, he has argued that he does not have all the records he

16

needs to support his claims. Moreover, Benson argues that claims 7–10 were only "placed on the record for preservation for future filings [because] [t]he records that are needed to attach for these claims have been withheld and has never been turned over to the defendant still to this day." (Doc. 5-2, #56). After the Respondent filed the state court record, Benson objected to it as "extremely incomplete," and that some transcripts were "heavily redacted." (Doc. 17, #2991, 2993). On the latter front, the Court agrees with Magistrate Judge Merz that the cited pages do not appear to contain any redactions. (Doc. 17, #2993 (listing supposedly redacted pages); Doc. 18, #3007). Some names have been redacted elsewhere in the record, but it seems that only proper names or similar personally identifying information were redacted in accordance with state law. (*See e.g.*, Doc. 14-3, #1679, 1704, 1729). In any event, as Magistrate Judge Merz describes, the core of Benson's objection is that the state never furnished him with certain discovery, particularly about the investigation into Tiera Rockaway, even though a year after his trial she was also charged with the child's death (*Id.*; Doc. 17, #2992–93). This became a theme throughout Benson's filings. (*See* Docs. 19, 21, 24, 29, 32, 36, 43).[7] Magistrate Judge Merz ruled on the discovery motions, but because Benson also raises this issue in his objections, the Court will address it as well.

As Magistrate Judge Merz repeatedly states, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the

---

[7] Benson's argument about his lack of records also bleeds into his claim of a *Brady* violation for the state not providing discovery related to Tiera Rockaway. The Court address this claim later, but ultimately concludes it is procedurally defaulted. *See* infra Law & Analysis, Part E.

merits." *Cullen*, 563 U.S. at 181. This limitation makes sense given that the federal court is reviewing whether the state court acted unreasonably based on the law and facts available at the time it adjudicated the petitioner's claim. *See id.* at 182. True, there is a narrow exception to this rule for cases involving claims of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 327–28 (1995) (finding that courts should consider all available evidence, regardless of admissibility, when evaluating claims based on actual innocence). But Benson advances no such claim here, so in challenging the Ohio court's adjudication of his ineffective-assistance claim, he is stuck with the record that existed before that court.

Benson's other claims were not adjudicated by a state court, and so they are not reviewed under § 2254(d). But because the Court finds they all are procedurally defaulted, *see infra* Law & Analysis, Part E, the Court need not address what the proper record would be for considering the merits of those claims.

## C.   The Court Will Review All Ten Grounds for Relief.

The final preliminary issue is which claims the Court should review. As a reminder, Magistrate Judge Merz construed Benson's amended petition as raising ten grounds for relief:

> **Claim 1.** Ineffective assistance of trial counsel for failure to litigate a motion to suppress Benson's statements to the police.
> **Claim 2.** Denial of defendant's right to be present at critical stages of the proceedings, his right to self-representation, and his right to an unbiased jury.
> **Claim 3.** Prosecutorial misconduct by suppressing evidence favorable to the defense.
> **Claim 4.** Denial of Petitioner's rights to confront his accusers and for compulsory process.

18

> **Claim 5.** Petitioner was illegally arrested and coerced to make incriminating statements.
>
> **Claim 6.** Cumulative Error.
>
> **Claim 7.** Unspecified prosecutorial misconduct.
>
> **Claim 8.** Insufficient evidence.
>
> **Claim 9.** Delay in indicting a co-defendant for a year.
>
> **Claim 10.** Void judgment.

(Doc. 6, #545–46 (citing Doc. 5, #39–56)). Benson clarified that he brings the third claim as a *Brady* violation, and he added factual allegations to the fifth claim. (Doc. 8). Because Benson did not address the other claims, they are presumably accurate.

Fast forward, though, to his objections to the Supplemental R&R. There, Benson states that he "now argues just a couple claims as he cannot argue the others as the relevant records are not supplied," and lists his remaining claims as only claims 2, 3, and 5. (Doc. 43, #3287). Yet, even in purporting to limit himself to those three claims, Benson still seems to argue some of the other claims. For example, he alleges that "the prosecution already misled the jury, from the start. Statements known to be false, to confuse the jury." (*Id.* at #3279). Comments like that seem to advance some kind of unspecified prosecutorial misconduct claim (his seventh claim), rather than falling under his second, third, or fifth claims. He also argues that "any and all evidence defense counsel prepared to put forth was denied and or extremely restricted by the trial court," which also falls outside of the three stated claims. (*Id.* at #3278).

So while Benson says he is limiting his arguments to certain claims, the substance of his objections appears to advance all of them. Because the Court is supposed to liberally construe a pro se litigant's pleadings, *see Haines*, 404 U.S. at 520–21, the Court will review all ten claims.

**D.    Benson's First Ground for Relief Fails.**

With that settled, turn to the Petition's merits. Benson's first ground for relief is that his trial counsel was ineffective because she failed to move to suppress his statements to the police following an allegedly unlawful arrest. (Doc. 5-2, #39–41; Doc. 6, #545). As noted above, the Court will review Benson's first claim for relief de novo because he specifically objected to the R&Rs that front. But that does not change the outcome; the Court still dismisses the claim.

For Benson to succeed in a federal habeas challenge to a state conviction, he must overcome the "formidable barrier" that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) erects to federal habeas relief. *White v. Plappert*, 131 F.4th 465, 476 (6th Cir. 2025) (quoting *Burt v. Titlow*, 571 U.S. 12, 19 (2013)). That is no easy task. AEDPA creates a "relitigation" bar for claims that a petitioner raised in state court and that the state court adjudicated on the merits. *Id.* Congress intentionally set a high bar for federal courts when reviewing state court convictions because (1) federal courts have a limited ability to hold evidentiary hearings in habeas, meaning they necessarily have a limited view of the facts, and (2) comity cautions in favor of respecting the finality of the state courts' decisions. *See Wilds v. Warden, Chillicothe Corr. Inst.*, 745 F. Supp. 3d 591, 598 (S.D. Ohio 2024).

To overcome that bar, Benson must prove either that the state court contravened or unreasonably applied clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or that the state court based its decision "on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2). Under the latter option, federal habeas courts must "accord the state trial court

20

substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). And "regardless of whether [the Court] would reach a different conclusion were [it] reviewing the case de novo, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001).

Benson raised his ineffective assistance claim in his direct appeal to the Fifth District Court of Appeals. *Benson*, 2020-Ohio-1258, ¶14. To succeed on his petition here, then, Benson would need to show that the Fifth District either unreasonably applied Supreme Court precedent or unreasonably determined the facts when it overruled this error. Benson makes neither showing.

Because the claim at issue is ineffective assistance of counsel, Benson would need to argue that the state court unreasonably applied the test from *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court held that an ineffective assistance of counsel claim has two components: (1) that defense counsel's performance was deficient, and (2) that the "deficient performance prejudiced the defense." *Id.* at 687. Benson does not mention the case by name in his filings. But he does argue that if his trial counsel had moved to suppress the statements to the police, she likely would have been successful. (Doc. 5-2, #40). And he claims "[t]his probability is sufficient to establish that Benson was prejudiced by this attorney's deficient performance." (*Id.* at #41). So Benson essentially is arguing the state court contravened or unreasonably applied *Strickland* in deciding that his counsel was not constitutionally deficient.

At the same time, Benson also argues that the state appellate court unreasonably determined the facts by concluding he voluntarily went to the police station instead of finding that police arrested him at his home before taking him to the station. (Doc. 5-2, #39–40).

This Court finds that the state court was not unreasonable in either its application of *Strickland* to the case at hand or in its determination of the relevant facts. The Court will start with the facts because they drive the state court's application of *Strickland*. Benson's trial counsel had moved to suppress the statements on other grounds, so the trial court held a suppression hearing. *Benson*, 2020-Ohio-1258, ¶ 41. There, the responding officer and lead detective testified that Benson was asked to go to the police station and was not initially in custody. *Id.* While the detective testified that if Benson had attempted to leave the station, "he probably would have been detained," the state appellate court properly held that "the officer's subjective intent to arrest is not controlling." *Id.* ¶ 42 (citing *State v. Edwards*, 68 N.E.3d 228, ¶ 19 (Ohio Ct. App. 2016)). That court concluded that "[t]he record reflects [Benson] voluntarily went to the station for questioning, and during the first interview [Benson] made incriminating statements giving police probable cause to detain him further." *Id.* ¶ 45. Those facts, if true, mean that the police did not unlawfully arrest Benson.

In his habeas petition and subsequent filings, Benson argues that the detective and responding officer made false statements that he was not under arrest and that other parts of the detective's testimony show that Benson was not free to leave. (*See,*

*e.g.,* Doc. 8, #554). But we are not writing on a blank slate; Benson must present clear and convincing evidence that the state court erred in finding he voluntarily went to the police station. *Clark*, 257 F.3d at 506. And he does not come close to meeting that burden here. While he points to sections of the detective's testimony that could demonstrate he was detained earlier, the state court considered that evidence when it made its original determination. *See Benson*, 2020-Ohio-1258, ¶¶ 42 (considering the detective's statement that Benson would have been detained if he tried to leave), 43 (reviewing the fact Benson was held in a locked interview room upon arrival and his cell phone and wallet seized). At minimum, Benson has not presented evidence this interpretation is incorrect. And Benson has not otherwise offered evidence showing the detective's and officer's statements were false. So the state appellate court did not unreasonably determine the facts when it concluded he was not illegally arrested.

This Court's inability to reassess the underlying facts in turn effectively dooms any argument that the state court unreasonably applied *Strickland* in holding that his trial attorney was not ineffective. Because Benson was not unlawfully arrested, it was unlikely that a motion to suppress his statements on those grounds would have succeeded. And his trial counsel attempted to suppress his statements for other reasons. Accordingly, the Court concludes that the state court properly held that Benson's trial counsel was not deficient. But more to the point, the state court certainly did not unreasonably apply *Strickland* in reaching that conclusion. Therefore, Benson's first claim for relief fails.

E.   **All of Benson's Other Claims for Relief Fail Because They Are Procedurally Defaulted.**

Magistrate Judge Merz found that procedural default bars the remaining claims. (Doc. 31, #3222–23). Benson does not object to this finding of procedural default; instead, he attempts to relitigate his claims by "start[ing] from scratch" and accuses Magistrate Judge Merz of bias against him. (Doc. 36, #3244; Doc. 43, #3271). The Court construes this as a general objection to the R&R and Supplemental R&R, which is equivalent to failing to object. Thus, the Court will review the remaining claims and procedural default conclusion only for clear error. Ultimately, the Court finds there is no clear error and agrees that the remaining claims are procedurally defaulted.

Besides the relitigation bar described above, AEDPA also requires that a petitioner in state custody "give the state courts an opportunity to act on his claims before he presents those claims to a federal court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (citing 28 U.S.C. § 2254(b)(1)). This prevents the "unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation [themselves]." *Id.* at 845 (cleaned up).

This fair presentation requirement is implemented through two related doctrines: exhaustion and procedural default. The former applies if the petitioner still has an available avenue to pursue relief in state court. If so, the federal court will not act on the habeas petition until the petitioner has availed himself of that state-

24

provided procedural vehicle. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012). Exhaustion is not at issue here.

Procedural default, on the other hand, arises when the state court would not adjudicate the issue now on procedural grounds because the petitioner did not raise the issue earlier. *Davila v. Davis*, 582 U.S. 521, 527–28 (2017); *Williams v. Anderson*, 460 F.3d 789, 805–06 (6th Cir. 2006). Federal courts cannot review such claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The R&R correctly states the Sixth Circuit's four-part test for procedural default. (Doc. 31, #3222–23 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986))). The Sixth Circuit recently articulated that test as requiring a court to determine: (1) "whether there is a state procedural rule that is applicable to petitioner's claim and that the petitioner failed to comply with the rule"; (2) "whether the state courts actually enforced the state procedural sanction"; (3) "whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim"; and (4) "the petitioner must demonstrate under *Sykes* that there was 'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015)

(citing *Maupin*, 785 F.2d at 138). Magistrate Judge Merz properly applied this test to Benson's remaining claims.

First, the R&R correctly notes that Ohio has a procedural rule that bars review of Benson's claim. (Doc. 31, #3223) "[I]ssues that could have been raised on direct appeal and were not are *res judicata* and not subject to review in subsequent proceedings." (*Id.* (citing *State v. Davis*, 894 N.E.2d 1221, 1223 (Ohio 2008))). Benson, with counsel at the time, could have raised these claims on direct appeal but failed to do so.

Second, a state court dismissed Benson's post-conviction petition raising identical claims on res judicata grounds. (*Id.*; Doc. 14-1, #1524). The Fifth District affirmed the dismissal due to res judicata as well. (Doc. 39, #3259 (citing *Benson*, 2025-Ohio-345)).

Third, federal courts have repeatedly held that Ohio's application of res judicata is an adequate and independent state ground. (Doc. 31, #3223 (collecting cases)); *see e.g.*, *Barton*, 786 F.3d at 464–65 (quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004)) ("[O]ur case law also makes clear that 'res judicata is an adequate and independent state ground for barring habeas review of constitutional claims.'").

Because the first three prongs are satisfied, the claims are presumed to be procedurally defaulted. In order to overcome this default, Benson would need to establish there was cause for him to not raise these claims on direct appeal, and also that he was prejudiced by these errors. *Id.* at 464. The R&R and Supplemental R&R

do not necessarily address this part of the analysis. Rather, both note that, while not listed as a claim, Benson's arguments center around how Tiera Rockaway was separately charged with the child's murder a year after Benson was convicted. (Doc. 31, #3223; Doc. 39, #3260). And "there is no constitutional right to co-indictment." (Doc. 39, #3260). The Court agrees that this is Benson's main contention, and there is no constitutional error on that point.

As for Benson's stated claims, he does not justify his delay in raising those issues. After all, with assistance of counsel, he filed a direct appeal raising four errors and pursued that appeal to the Ohio Supreme Court, just not these errors. *Benson*, 2020-Ohio-1258, ¶ 14. And, while he did raise them in his post-conviction petition, that was too late. (Doc. 14-1, #1524); *Benson*, 2025-Ohio-345, ¶¶ 16–24. In short, "[t]hese claims were all known or could have been known at the time of trial and on direct appeal." *Benson*, 2025-Ohio-345, ¶ 21. So the Court concludes that Benson's claims are barred by res judicata and thus are procedurally defaulted.

## CONCLUSION

For the reasons discussed above, the Court **OVERRULES** Benson's Objections to the R&Rs (Docs. 36, 43) and **ADOPTS** the R&R and Supplemental R&R (Docs. 31, 39). As a result, the Court **DISMISSES WITH PREJUDICE** Benson's Amended Habeas Petition (Docs. 5, 5-2). And because the Court finds that reasonable jurists would not disagree with these conclusions, the Court **DENIES** Benson a certificate of appealability and **CERTIFIES** that any appeal of this Opinion and Order would

be objectively frivolous. Accordingly, the Court **DIRECTS** the Clerk to enter

judgment and **TERMINATE** this case on its docket.

     **SO ORDERED.**

January 14, 2026
  **DATE**

                       **DOUGLAS R. COLE**
                       **UNITED STATES DISTRICT JUDGE**

28